TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DAVID Y. PI (Cal. Bar No. 337432)
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorneys
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3659/5564
    Facsimile: (213) 894-6269/2927
    E-mail:   david.pi@usdoj.gov
             david.lachman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>DEMI PHAM, and<br>CATHY LAI DAM,<br><br>      Defendants. | No. CR 20-114-SVW<br><br><u>GOVERNMENT'S TRIAL MEMORANDUM</u><br><br>Trial Date: May 24, 2022<br>Trial Time: 8:30 a.m.<br>Location:   Courtroom of the Hon.<br>                Stephen V. Wilson |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys David Y. Pi and David C. Lachman, hereby files its Trial Memorandum.

//

//

The government respectfully reserves the right to supplement or modify this memorandum as may be appropriate.

Dated: May 19, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
DAVID Y. PI
DAVID C. LACHMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                      PAGE

TABLE OF AUTHORITIES...............................................................i

MEMORANDUM OF POINTS AND AUTHORITIES...............................................1

I.    INTRODUCTION.................................................................1

II.   STATUS OF CASE..............................................................1

      A.    Indictment............................................................1

      B.    Discovery.............................................................2

      C.    Trial.................................................................2

      D.    Defendant's Custody Status............................................2

      E.    Government Witnesses..................................................2

      F.    Stipulations..........................................................2

      G.    Pretrial Motions......................................................3

            1.    Motions to Suppress.............................................3

            2.    Motion to Sever.................................................3

            3.    Motions *in Limine*.............................................3

      **H.    Jury Instructions and Joint Verdict Form**..................4

III.  THE CHARGES.................................................................4

      A.    Conspiracy to Export Controlled Substances...............4

      B.    Possession with Intent to Distribute a Controlled
            Substance.............................................................5

      C.    Knowing Possession....................................................5

      D.    Intent to Distribute..................................................6

      E.    Proving Drug Quantity.................................................6

      F.    Attempted Exportation of Methamphetamine..................6

IV.   STATEMENT OF FACTS..........................................................7

STATEMENT OF FACTS................................................................7

      The Nature of the Conspiracy to Export Controlled
            Substances............................................................7

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                PAGE

     PHAM's Arrest and Role in the Conspiracy and Overt Acts........8

     DAM's Role in the Conspiracy and Overt Acts...................9

V.   ANTICIPATED LEGAL AND EVIDENTIARY ISSUES......................10

    A.   Authentication and Foundation...........................10

    B.   Physical Evidence.......................................10

    C.   Video and Audio Recordings..............................10

    D.   Defendant's Statements..................................11

        1.   Admissible When Offered by the Government..........11

        2.   Inadmissible When Offered by Defendant.............12

    E.   Testimony of Courier Le.................................13

    F.   Expert Opinion Testimony................................13

        1.   Drug Distribution Expert...........................14

        2.   Vietnamese Language Expert.........................15

        3.   Fingerprint Expert.................................15

        4.   Forensic Chemists..................................15

    G.   Lay Law Enforcement Testimony...........................16

    H.   Cross-Examination of Defendant..........................17

    I.   Cross-Examination of Defense Character Witnesses........18

    J.   Photographs.............................................18

    K.   Affirmative Defenses....................................20

    L.   Reciprocal Discovery....................................20

VI.  CONCLUSION....................................................21

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE(S)

**CASES**

James v. Illinois,
    493 U.S. 307 (1990)........................................ 14

Michelson v. United States,
    335 U.S. 469 (1948)................................... 20, 21

Michigan v. Harvey,
    494 U.S. 344 (1990)........................................ 14

Ohler v. United States,
    529 U.S. 753 (2000)........................................ 19

Oregon v. Bradshaw,
    462 U.S. 1039 (1983)....................................... 14

People of Territory of Guam v. Ojeda,
    758 F.2d 403 (9th Cir. 1985)............................... 21

United States v. Adjani
    452 F.3d 1140, 1147-48 (9th Cir. 2006)..................... 23

United States v. Andersson,
    813 F.2d 1450 (9th Cir. 1987).............................. 16

United States v. Barragan,
    871 F.3d 689 (9th Cir. 2017)............................... 18

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985).............................. 19

United States v. Blackwood,
    878 F.2d 1200 (9th Cir. 1989).............................. 12

United States v. Carrasco,
    257 F.3d 1045 (9th Cir. 2001)............................... 5

United States v. Chu Kong Yin,
    935 F.2d 990 (9th Cir. 1991)............................... 9

United States v. Coades,
    549 F.2d 1303 (9th Cir. 1977).............................. 14

United States v. Collicott,
    92 F.3d 973 (9th Cir. 1996)................................ 15

United States v. Cuozzo,
    962 F.2d 945 (9th Cir. 1992)............................... 19

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE(S)

United States v. Dorsey,
      No. 2:14-CR-00328(B)-CAS,
      2017 WL 3159981 (C.D. Cal. July 24, 2017)......................13

United States v. Flores
      802 F.3d 1028, 1045 (9th Cir. 2015) ...........................20

United States v. Gadson,
      763 F.3d 1189 (9th Cir. 2014)...............................9, 18

United States v. Gonzalez,
      279 F. App'x 806 (11th Cir. 2008).............................22

United States v. Harrington,
      923 F.2d 1371 (9th Cir. 1991).................................10

United States v. Innie,
      7 F.3d 840 (9th Cir. 1993).....................................5

United States v. Jobe
      933 F.3d 1074, 1077 (9th Cir. 2019)...........................20

United States v. King,
      587 F.2d 956 (9th Cir. 1978)..................................11

United States v. Kleinman,
      880 F.3d 1020 (9th Cir. 2017)..................................0

United States v. Lofstead
      No. 320CR00053MMDWGC, 2021 WL 5501101 (D. Nev. Nov. 22, 2021)
      .............................................................20

United States v. Matta-Ballesteros,
      71 F.3d 754 (9th Cir. 1995)...................................12

United States v. May,
      622 F.2d 1000 (9th Cir. 1980).................................21

United States v. McCollom,
      664 F.2d 56 (5th Cir. 1981)...................................21

United States v. Miranda-Uriarte,
      649 F.2d 1345 (9th Cir. 1981).................................19

United States v. Mora,
      876 F.2d 76 (9th Cir. 1989)....................................5

United States v. Moreno,
      243 F.3d 551 (9th Cir. 2000)..................................18

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                           PAGE(S)

United States v. Most,
    789 F.2d 1411 (9th Cir. 1986)...................................14

United States v. Oaxaca,
    569 F.2d 518 (9th Cir. 1978)....................................21

United States v. Ortega,
    203 F.3d 675 (9th Cir. 2000)....................................15

United States v. Pena-Gutierrez,
    222 F.3d 1080 (9th Cir. 2000)...................................20

United States v. Pino-Noriega,
    189 F.3d 1089 (9th Cir. 1999)...................................18

United States v. Powell,
    955 F.2d 1206 (9th Cir. 1992)....................................0

United States v. Rodriguez-Lopez,
    63 F.3d 892 (9th Cir. 1995).....................................14

United States v. Seifert,
    445 F.3d 1043 (8th Cir. 2006)...................................13

United States v. Skeet,
    665 F.2d 983 (9th Cir. 1982)....................................18

United States v. Smith,
    591 F.3d 974 (8th Cir. 2010)....................................12

United States v. Stearns,
    550 F.2d 1167 (9th Cir. 1977)...................................21

United States v. Thongsy,
    577 F.3d 1036 (9th Cir. 2009)....................................5

United States v. Tisor,
    96 F.3d 370 (9th Cir. 1996).....................................13

United States v. Torralba-Mendia,
    784 F.3d 652 (9th Cir. 2015)....................................12

United States v. VonWillie,
    59 F.3d 922 (9th Cir. 1995).....................................18

United States v. Walker,
    217 F. App'x 714 (9th Cir. 2007)................................14

United States v. Whitman,
    771 F.2d 1348 (9th Cir. 1985)...................................15

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                          PAGE(S)

United States v. Young,
        248 F.3d 260 (4th Cir. 2001).................................. 20

Zal v. Steppe,
        968 F.2d 924 (9th Cir. 1992).................................. 20

Zeen v. Cty. of Sonoma,
        No. 17-CV-02056-LB,
        2018 WL 3769867 (N.D. Cal. Aug. 9, 2018)...................... 13

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE(S)

**STATUTES**

21 U.S.C. § 841.................................................1, 4, 6

California Penal Code § 10851A.......................................19

**RULES**

Fed. R. Evid. 404...................................................... 4

Fed. R. Evid. 405.................................................20, 21

Fed. R. Evid. 701......................................................18

Fed. R. Evid. 702......................................................16

Fed. R. Evid. 703......................................................16

Fed. R. Evid. 704......................................................16

Fed. R. Evid. 801..................................................13, 15

Fed. R. Evid. 901............................................9, 10, 12, 21

Fed. R. Crim. P. 12.1..................................................23

Fed. R. Crim. P. 12.2..................................................23

Fed. R. Crim. P. 12.3..................................................23

Fed. R. Crim. P. 16................................................19, 20

Fed. R. Crim. Pro. 12, N. Adv. Comm....................................21

**Other**

32 McCormick on Evid. § 215 (7th ed.) .................................19

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Beginning on a date unknown and continuing until on March 6, 2020, defendants DEMI PHAM and CATHY LAI DAM conspired to transport multiple kilograms of cocaine and methamphetamine from California to Australia.  As part of the conspiracy, PHAM recruited couriers, like DAM, to carry the concealed drugs in their luggage on flights to Australia.  PHAM packaged the drugs in candles and toy boxes in her home and then put them into the couriers' suitcases for them to take on their flights.  Those same couriers would then bring cash payments for the drugs back to the United States on return flights and give the money to PHAM and other co-conspirators.  On January 15, 2019, officers for the Department of Homeland Security ("DHS") apprehended DAM after she boarded a flight to Australia from Los Angeles and recovered approximately 7.2 kilograms of methamphetamine in DAM's checked luggage.  On March 6, 2020, DHS executed a search warrant at PHAM's residence in Rosemead, California, and recovered approximately 10.3 kilograms of methamphetamine in PHAM's house, including some that PHAM had attempted to discard out a window.

20

**II.   STATUS OF CASE**

21

**A.    Indictment**

22
23
24
25
26
27
28

On September 3, 2021, a federal grand jury charged PHAM and DAM with (1) conspiracy to export controlled substances, in violation of 21 U.S.C. § 963 (Count One); (2) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (Count Two); and (3) attempted exportation of methamphetamine, in violation of 21 U.S.C. §§ 963, 953(c), 960(a)(1), (b)(1)(H) (Count Three).  (Dkt. 74.)  PHAM was also charged

1   individually in a separate count for possession with intent to
2   distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1),
3   (b)(1)(A)(viii) (Count Four).

4   **B.   Discovery**

5       The government has produced approximately 16,009 Bates-numbered
6   pages of discovery, including reports, texts, cellphone records,
7   fingerprint records, photographs, and audio and video recordings.
8   Defense counsel has produced no reciprocal discovery and noticed no
9   affirmative defenses, despite the government's requests.

10  **C.   Trial**

11      The government anticipates that its case-in-chief will last
12  approximately three to four days.

13  **D.   Defendant's Custody Status**

14      Defendants are on bond pending trial.

15  **E.   Government Witnesses**

16      Without any stipulations to evidence, the government estimates
17  that it will call twenty witnesses in its case-in-chief.  However,
18  the parties have agreed in principle to stipulations to drug analyst
19  and fingerprint testimony that would eliminate the need for at least
20  seven of its witness. (See Dkt. 175.)  The government reserves the
21  right to change its witness list as it deems necessary.

22      The defendants have disclosed no witnesses.  However, PHAM has
23  noticed a fingerprint expert.  The government's understanding is that
24  if the parties enter a stipulation as to fingerprint evidence, PHAM's
25  fingerprint expert will not need to testify.

26  **F.   Stipulations**

27      The parties have agreed to stipulate to the drug analysis
28  evidence (i.e. the type, weight, and purity of drugs at issue in this

case).  In addition, PHAM has agreed to stipulate to the fingerprint identification between a latent print on drug packaging and her fingerprint.  Finally, the parties will confer on evidentiary stipulations to avoid the need to call approximately three foundational witnesses.  The parties are formalizing this agreement into a signed stipulation that will be filed before trial.

### G.    Pretrial Motions

#### 1.    Motions to Suppress

PHAM moved to suppress statements she made in two interrogations with law enforcement on the basis that law enforcement violated her Miranda rights.  (Dkt. 78.)  The Court granted the motion with respect to statements PHAM made in November 2018, and denied the motion with respect to statements she made in March 2020.  (Dkt. 101.)

#### 2.    Motion to Sever

PHAM moved to sever her trial from the trial of co-defendant DAM, principally on the grounds that out-of-court statements DAM made to law enforcement directly implicated her and therefore presented an issue under Bruton v. United States, 391 U.S. 123 (1968 . (Dkt. 93.) The Court denied PHAM's motion and the cases remained joined for trial.  (Dkt. 104.)

#### 3.    Motions *in Limine*

The government filed a motion in limine to exclude irrelevant and unfairly prejudicial evidence – specifically, evidence related to the defendants' health, family relationships, and the consequences of punishment on their family members.  (Dkt. 116.)  The defendants filed oppositions to that motion, which is still pending the Court's ruling.  (Dkt. 124, 133.)

3

On May 4, 2022, PHAM and DAM jointly filed a motion _in limine_ to exclude the government's proposed expert on drug trafficking on the grounds that the testimony will not help the jury and is unfairly prejudicial.  The government will file an opposition to this motion by May 20, 2022, and ask that the Court rule on this motion prior to trial.

On May 12, 2022, DAM filed a motion _in limine_ to admit Rule 404(b) evidence related to other alleged couriers, in part to prove that there was a common scheme or plan wherein the couriers, like DAM, did not have knowledge of the drugs they were transporting. (Dkt. 125.)  The government will file an opposition to this motion by May 20, 2022, and ask that the Court rule on this motion prior to trial.

Finally, on May 19, 2022, DAM filed a motion _in limine_ to exclude her post-arrest statements.  (Dkt. 135.)  The government will file an opposition to this motion by May 20, 2022, and ask that the Court rule on this motion prior to trial.

**H.  Jury Instructions and Joint Verdict Form**

The parties met and conferred regarding jury instructions.  The government has filed joint and disputed proposed instructions and a joint proposed verdict form.  (Dkts. 129, 130, 131.)

**III. THE CHARGES**

**A.  Conspiracy to Export Controlled Substances**

For defendants to be found guilty of violating 21 U.S.C. § 963, possession with intent to distribute a controlled substance, as charged in Count One of the indictment, the government must prove: (1) there was an agreement between two or more persons to export from the United States controlled substances; and (2) defendants joined in

4

the agreement knowing of its purpose and intending to help accomplish that purpose.  See Ninth Circuit Model Jury Instructions, Nos. 12.5, 12.19 (2022 ed.) (modified to conform to exportation and to reflect indictment).

**B.   Possession with Intent to Distribute a Controlled Substance**

For defendants to be found guilty of violating 21 U.S.C. § 841(a)(1), possession with intent to distribute a controlled substance, as charged in Counts Two and Four of the indictment, the government must prove: (1) defendants knowingly possessed a controlled substance; and (2) defendants possessed it with the intent to distribute it to another person.  See Ninth Cir. Manual of Model Crim. Jury Instr. No. 9.15 (2010 ed.).

**C.   Knowing Possession**

A defendant has "possession" of something if he "knows of its presence and has physical control of it," or knows of its presence and "has the power and intention to control it."  United States v. Thongsy, 577 F.3d 1036, 1040-41 (9th Cir. 2009) (cleaned up); Ninth Cir. Manual of Model Crim. Jury Instr. No. 3.17 (2010 ed.).  "More than one person can be in possession of something if each knows of its presence and has the power and intention to control it."  United States v. Carrasco, 257 F.3d 1045, 1050 (9th Cir. 2001). It does not matter whether defendants knew that the substance was a particular controlled substance.  It is sufficient that they knew that it was some kind of a prohibited drug.  See Ninth Cir. Manual of Model Crim. Jury Instr. No. 9.15 (2010 ed.).

With respect to Count Two against DAM, the jury may find that DAM acted knowingly if it finds beyond a reasonable doubt that DAM (1) was aware of a high probability that there were prohibited drugs

5

in her luggage on or about January 15, 2019, and (2) deliberately
avoided learning the truth.  See Ninth Circuit Model Jury
Instructions, No. 4.9 (2022 ed.) (modified to reflect indictment).

### D.    Intent to Distribute

To "possess with intent to distribute" means to possess with
intent to deliver or transfer possession to another person, with or
without any financial interest in the transaction.  See id.  "A jury
may infer the intent to distribute a controlled substance from
quantity alone" or "from the presence of packaging materials."
United States v. Innie, 7 F.3d 840, 844 (9th Cir. 1993); accord
United States v. Mora, 876 F.2d 76, 77–78 (9th Cir. 1989)
("Possession of a large quantity of narcotics alone may be sufficient
to support a finding that one knowingly possessed the[m].").

### E.    Proving Drug Quantity

The government is not required to prove that defendants
possessed the exact amount of methamphetamine charged.  However, for
Count Two, Three, and Four, in order for defendants to be subject to
enhanced statutory maximum and mandatory-minimum penalties under 21
U.S.C. § 841(b)(1)(A)(viii), the jury must find that the offense
involved at least fifty grams of actual methamphetamine.  (Dkt. 73.)

### F.    Attempted Exportation of Methamphetamine

For defendants to be found guilty of violating 21 U.S.C. §§ 963,
953(c), 960(a)(1), (b)(1)(H), attempted exportation of
methamphetamine in Count Three of the indictment, the government must
prove: (1) the defendants intended to export methamphetamine from the
United States to another country; (2) the defendants knew the
substance they were exporting from the United States to another
country was methamphetamine or some other prohibited drug; and (3)

6

the defendants did something that was a substantial step toward committing the crime and that strongly corroborated the defendants' intent to commit the crime.  See Ninth Circuit Model Jury Instructions, Nos. 12.7, 12.19 (2022 ed.) (modified to conform to attempted exportation and to reflect indictment).

With respect to Count Three against DAM, the jury may find that DAM acted knowingly if it finds beyond a reasonable doubt that DAM (1) was aware of a high probability that there were prohibited drugs in her luggage on or about January 15, 2019, and (2) deliberately avoided learning the truth.  See Ninth Circuit Model Jury Instructions, No. 4.9 (2022 ed.) (modified to reflect indictment).

## IV.  STATEMENT OF FACTS

**STATEMENT OF FACTS**

The government expects that the evidence at trial will establish the following facts, among others:

**The Nature of the Conspiracy to Export Controlled Substances**

Beginning on or before November 1, 2018, through about March 6, 2020, defendant DEMI PHAM conspired to transport cocaine and methamphetamine to Australia through couriers who transported drugs in their luggage on commercial flights from the Central District of California to Australia.  The drugs were typically concealed inside candles or toy boxes.  PHAM and co-conspirators would recruit the couriers, purchase the couriers' airline tickets, pay for the couriers' lodging, and (in some cases) pay the couriers in cash for their service.  PHAM also sent several packages containing cocaine and methamphetamine via USPS from the Los Angeles area to Australia. The indictment alleges eighteen overt acts in furtherance of the conspiracy and identifies five couriers who were intercepted by law

enforcement either with drugs on outbound flights to Australia, or cash upon return to the United States.

**PHAM's Arrest and Role in the Conspiracy and Overt Acts**

On March 6, 2020, HSI executed an arrest and search warrant at PHAM's residence.  Prior to the entering the house, HSI agents and other law enforcement officers saw PHAM throwing packages later determined to contain methamphetamine out of a side door.  In total, HSI recovered more than ten kilograms of pure methamphetamine from PHAM's home.  In a post-arrest Mirandized interview, PHAM admitted that co-conspirators paid her $2,000 each month to store methamphetamine in her house, and that she received deliveries of methamphetamine on a regular basis.  When confronted with the fact that her fingerprint was found on methamphetamine packaging seized from a courier,[1] PHAM admitted that she participated in the handling and packaging of the drugs to prepare them for transport by others.

The government further anticipates that courier My Linh Le ("Le") will testify that PHAM recruited Le into the conspiracy as a courier.  Le will testify that PHAM told Le that whenever PHAM needed money, she took a trip to Australia; that PHAM said she had done this many times without any problems; and that PHAM offered her thousands of dollars in exchange for carrying the methamphetamine to Australia.  PHAM and a co-conspirator then took Le to a travel agency, where they gave Le $1510 in cash to purchase a one-way ticket to Sydney, Australia.  In order to convincing Le to carry toy boxes containing drugs in her luggage to Australia, PHAM agreed to accompany Le on her trip, but the methamphetamine was transported in Le's luggage only.

---

[1] Testimony will establish that PHAM's fingerprint was found on seized drug packaging in the luggage of courier Yang.

8

1    PHAM is also associated with other co-conspirators.  HSI agents

2  went to Australia and participated in the arrest of Ung, a suspected

3  recipient of the narcotics, after a package originally containing

4  cocaine hidden in candles, but that had been intercepted by law

5  enforcement, was delivered to Ung.  After Ung altered a person named

6  "Demi" that there was a recording device in the package, he received

7  at least five calls from "Demi" immediately before and at the time of

8  his arrest.

9  **DAM's Role in the Conspiracy and Overt Acts**

10    DAM was one of PHAM's methamphetamine couriers.  On January 15,

11  2019, DAM boarded a flight departing LAX for Australia after checking

12  luggage that contained approximately 7.2 kilograms of methamphetamine

13  concealed within a Fisher Price toy box and a Louis Vuitton bag.

14  During a mirandized interview, DAM admitted that an unnamed person[2]

15  paid her $1,000 to transport the methamphetamine to Australia, though

16  she claimed that she believed the items were merely "gifts."  The

17  drugs seized from DAM are connected to the conspiracy by virtue of

18  the common modus operandi of packing large quantities of

19  methamphetamine in toy boxes in the checked luggage from a flight

20  departing Los Angeles and bound for Australia.  Apart from the common

21  modus operandi connecting DAM to the conspiracy, the evidence will

22  show that PHAM had a copy of DAM's travel visa to Australia in her

23  phone.  DAM and PHAM also have a history of overlapping travel to

24  Australia.  Evidence obtained from PHAM's phone show that DAM and

25  PHAM were in frequent contact in the days prior to a November 30,

26

27    _____

28    [2] DAM referred to this person only as "Sister."  The government
currently does not intend to elicit this statement pursuant to <u>Bruton</u>
unless DAM chooses to testify at trial.

2018, attempted delivery of methamphetamine to Australia.  The courier who transported the methamphetamine on that date, My Linh Le, will testify that another female courier was supposed to make that trip, but that the other courier could not make the trip because her passport was expired.  The evidence will show that DAM received a renewed passport in January 2019.

## V.    ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

The following legal issues may arise at trial.

### A.    Authentication and Foundation

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. Rule Evid. 901(a).  Evidence should be admitted, despite any challenge, once the government makes a prima facie showing of authenticity or identification so "that a reasonable juror could find in favor of authenticity or identification" because "the probative force of the evidence offered is, ultimately, an issue for the jury."  United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991) (cleaned up); see also United States v. Gadson, 763 F.3d 1189, 1204 (9th Cir. 2014).

### B.    Physical Evidence

The government intends to introduce the physical drugs from the seizure of drugs at PHAM's home and at the DAM seizure.  The government agents will coordinate with the Marshals and follow all necessary safety protocols in the handling of drug evidence.

### C.    Video and Audio Recordings

The government intends to admit (1) portions of PHAM's recorded interview with law enforcement on March 6, 2020; (2) portions of

DAM's recorded interviews with law enforcement on January 15 and 16, 2019; (3) portions of surveillance video from LAX airport showing DAM checking in her luggage that was later found to contain methamphetamine; and (4) portions of video showing the search of PHAM's residence on March 6, 2020.

A recording is admissible upon a showing that it is "accurate, authentic, and generally trustworthy." United States v. King, 587 F.2d 956, 961 (9th Cir. 1978). Testimony that a recording depicts evidence that the testifying witness observed sufficiently authenticates that recording. Fed. R. Evid. 901(b); United States v. Smith, 591 F.3d 974, 979-80 (8th Cir. 2010). With respect to surveillance video, Officer Shaun Gardner will lay foundation on the time and places recorded by surveillance cameras at issue in this case and how they operate in the normal course.

All duly admitted recordings must be played in open court. The foundation that must be laid to introduce recordings is largely within the Court's discretion. The Ninth Circuit has held that recordings are sufficiently authenticated under Federal Rule of Evidence 901(a) if sufficient proof has been introduced "so that a reasonable juror could find in favor of authenticity or identification," which can be done by "proving a connection between the evidence and the party against whom the evidence is admitted" by direct or circumstantial evidence. United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995), opinion amended on denial of reh'g, 98 F.3d 1100 (9th Cir. 1996).

**D.   Defendant's Statements**

**1.   Admissible When Offered by the Government**

Defendants' statements are admissible at trial as admissions by

1   a party opponent and are not hearsay <u>when offered by the government</u>.

2   Fed. R. Evid. 801(d)(2)(A).  In its case-in-chief, the government

3   will seek to admit PHAM's and DAM's statements during their law-

4   enforcement interrogations.  The government also intends to introduce

5   PHAM's statements in text messages and unrecorded statements law-

6   enforcement heard her make.  The Ninth Circuit has held that

7   "unrecorded statements are admissible, and [has] never required a

8   trial court to instruct a jury to give unrecorded statements less

9   evidentiary weight."  <u>United States v. Walker</u>, 217 F. App'x 714, 717

10   (9th Cir. 2007) (citing <u>United States v. Coades</u>, 549 F.2d 1303, 1305

11   (9th Cir. 1977)).

12           2.  <u>Inadmissible When Offered by Defendant</u>

13      While the government may present evidence regarding defendants'

14   statements, defendants are not entitled to elicit their own prior

15   statements from other witnesses or recordings under Federal Rule of

16   Evidence 801(d)(2)(A), because they are hearsay <u>when offered by that</u>

17   <u>defendant</u>.  <u>See</u> <u>United States v. Ortega</u>, 203 F.3d 675, 682 (9th Cir.

18   2000).  To permit otherwise would place a defendant's statements

19   "before the jury without subjecting himself to cross-examination,

20   precisely what the hearsay rule forbids."  <u>Id.</u> at 682 (district court

21   properly granted the government's motion <u>in</u> <u>limine</u> to exclude

22   defendant from introducing his own post-arrest statements through the

23   defense's cross-examination of a government witness).

24      The rule of completeness also does not entitle a defendant to

25   elicit her own inadmissible hearsay statements.  In <u>Ortega</u>, the Ninth

26   Circuit held that non-self-inculpatory statements, even if made

27   contemporaneously with other self-inculpatory statements, are

28   inadmissible hearsay, and the rule of completeness does not allow for

admission.  203 F.3d at 682; see also United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (holding that Fed. R. Evid. 106 does not compel admission of otherwise inadmissible hearsay evidence).

**E.  Testimony of Courier Le**

The government anticipates calling Le to testify at trial.  Le is expected to testify that she was recruited by PHAM as a courier and was paid to transport narcotics in her luggage to Australia.  She will testify to her experience as a courier in the conspiracy.  The government has offered Le "use immunity" to statements and information she supplies in preparation for and during her testimony in this case.  The government offered immunity to Le because she stated through her counsel, George Buehler, that she intends to assert her Fifth Amendment right against self-incrimination in any meeting with the government and in any testimony relating to this case.  Pursuant to the terms of the immunity agreement, the government has made no other promises to Le and there are no other understandings, expectations, agreements, or conditions between the government and Le with respect to this case.

**F.  Expert Opinion Testimony**

A qualified expert witness may provide opinion testimony on a fact at issue if specialized knowledge will assist the trier of fact. Fed. R. Evid. 702.  The Court has broad discretion to determine whether to admit expert testimony.  United States v. Andersson, 813 F.2d 1450, 1458 (9th Cir. 1987).  Expert opinion may be based on hearsay or facts not in evidence, where the facts or data relied upon are of the type reasonably relied upon by experts in the field.  Fed. R. Evid. 703.  An expert may also provide opinion testimony even if it embraces an ultimate issue to be decided by the trier of fact.

13

1  Fed. R. Evid. 704.

2        The government has designated and intends to call two experts at

3  trial: a drug distribution expert, HSI Special Agent Nicholas

4  DeSimone; and a Vietnamese language expert, Peter Bui.[3]  The

5  government has noticed their testimony as expert testimony, and has

6  summarized it for defense counsel.  The government also noticed

7  chemists to testify regarding the drugs in this case, as well as a

8  fingerprint expert.  However, as stated above, the parties anticipate

9  stipulations obviating the need for their testimony.  The

10 government's noticed experts will assist the trier of fact in

11 understanding the evidence and determining facts at issue.

12        1.    Drug Distribution Expert[4]

13       Among other topics noticed, Agent DeSimone is expected to

14 testify to:

15              (1) distinctions between amounts of drugs possessed

16         for personal use versus amounts possessed for export or

17         distribution;

18              (2) the benefits to a drug trafficking organization

19         of exporting drugs from Southern California to Australia;

20              (3) Couriers transporting drugs on commercial flights

21         often hide the drugs in their checked luggage, which

22         allows them to have plausible deniability of the existence

23         of the drugs;

24              (4) Drug trafficking organizations typically do not

25         use uninformed, untrusted, or non-participating couriers

---

27  [3] The government's notice states that it will call Mr. Bui or potentially another Vietnamese language expert to testify at trial.

28  [4] As discussed in Section II(G)(3), *infra*, the government's drug expert is subject to a pending motion in limine.

14

to transport kilograms of methamphetamine or cocaine, because, for example, an unknowing courier (a) might place other prohibited items in their luggage, thus risking the risk of detection or interception; (b) might leave the narcotics unattended; (c) might make statements at the baggage counter or to transportation safety officials that could draw suspicion; or (d) might become angry when drugs are discovered and agree to cooperate with law enforcement in investigating the drugs' origins.

### 2.   Vietnamese Language Expert

Peter Bui, or another Vietnamese language expert, will testify to the accuracy of translations of Vietnamese into English and English into Vietnamese for the interview of PHAM, DAM, and in text messages involving PHAM.

### 3.   Fingerprint Expert

Forensic Examiner Heather Jenner has substantial training and experience in conducting fingerprinting analysis.  She analyzed the fingerprints on drug packaging recovered in the investigation of this case and identified PHAM's fingerprint to drug packaging associated with courier Yang.  The government anticipates a stipulation as to the fingerprint results.  However, if Ms. Jenner testifies, the government expects that she will testify to: (1) the methodologies used; (2) the reliability of those methods; and (3) the testing results.

### 4.   Forensic Chemists

The government anticipates a stipulation as to the drug testing results.  However, if the parties do not reach a stipulation, chemists Kristin Tanabe, Trevor Curtis, Alba Jacobo, Joanne,

Scheurer, and Flynt Goodson all have substantial training and experience testing drugs and analyzing their chemical compositions. Each chemist tested different drugs seized from different overt acts in this case.  The government expects that each witness will testify to: (1) the methodologies used; (2) the reliability of those methods; (3) testing results; and (4) the chain of custody of the tested substances and standard chain-of-custody practices their laboratory.

### G.    Lay Law Enforcement Testimony

Federal Rule of Evidence 701 "permits a lay witness to give opinion testimony as long as the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."  United States v. Pino-Noriega, 189 F.3d 1089, 1097 (9th Cir. 1999) (cleaned up).  Lay opinion testimony by law enforcement officers is admissible and is not necessarily expert testimony within the meaning of Rule 16(a)(1)(G).  See United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995); see also United States v. Barragan, 871 F.3d 689, 703-04 (9th Cir. 2017).  As the Ninth Circuit has explained, law enforcement officers' opinion testimony:

> is a means of conveying to the [jury] what the witness has seen or heard . . . .  Because it is sometimes difficult to describe the mental or physical condition of a person, his character or reputation, the emotions manifest by his acts; speed of a moving object or other things that arise in a day to day observation of lay witnesses; things that are of common occurrence and observation, such as size, heights, odors, flavors, color, heat, and so on; witnesses may relate their opinions or conclusions of what they observed.

United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982); Gadson, 763 F.3d at 1209 ("[A]n investigator who has accumulated months or

16

even years of experience with the events, places, and individuals involved in an investigation necessarily draws on that knowledge when testifying; indeed, it is those out-of-court experiences that make the witness's testimony helpful to the jury.").

Rule 16 notice is not required for lay witnesses. United States v. Moreno, 243 F.3d 551, 551 (9th Cir. 2000) ("Rule 16 notice was not required, however, because this testimony was properly admitted as the opinion of a lay witness.").

## H.    Cross-Examination of Defendant

The government does not know if defendants intend to testify at trial.  If defendants testify, the government should be permitted to fully cross-examine them.  A defendant who testifies at trial waives her right against self-incrimination and subjects herself to cross-examination concerning all matters reasonably related to the subject matter of her testimony.  See, e.g., Ohler v. United States, 529 U.S. 753, 759 (2000) ("It has long been held that a defendant who takes the stand in his own behalf cannot then claim the privilege against cross-examination on matters reasonably related to the subject matter of his direct examination.").

A defendant has no right to avoid cross-examination on matters that call into question her claim of innocence.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  The scope of a defendant's waiver is co-extensive with the scope of relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver.  Rather, the inquiry is whether 'the government's questions are

17

reasonably related' to the subjects covered by the defendant's testimony.").

## I.   Cross-Examination of Defense Character Witnesses

The Supreme Court has recognized that character evidence -- particularly, cumulative character evidence -- has weak probative value and great potential to confuse issues and prejudice the jury. See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The Court has thus given trial courts wide discretion to limit the presentation of character evidence.  Id.  In addition, the form of any proffered evidence must be proper.  Federal Rule of Evidence 405(a) sets forth the sole methods for which character evidence may be introduced.  It specifies that where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation; and (2) by testimony as to opinion.  Thus, defendant may not introduce specific instances of her good conduct through others' testimony.  Id. at 477 ("The witness may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental or moral traits.").

On cross-examination of any defense character witnesses, the government may inquire into specific instances of defendant's past conduct relevant to any character trait at issue.  See Fed. R. Evid. 405(a).  To that end, a defendant's character witnesses may be cross-examined about their knowledge of a defendant's past crimes, wrongful acts, and arrests.  See Michelson, 335 U.S. at 481.  The only prerequisite is that there must be a good faith basis that the incidents inquired about are relevant to a character trait at issue. See United States v. McCollum, 664 F.2d 56, 58 (5th Cir. 1981).

## J.   Photographs

Photographs are generally admissible.  See United States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs of crime scene admissible).  "Photographs are admissible as substantive as well as illustrative evidence."  United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).  "Under the Federal Rules, the witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question."  People of Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985); see also United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978); Fed. R. Evid. 901(b)(1).  A photograph is authenticated if a witness testifies that it is an accurate representation of facts of which the witness has personal knowledge; "the witness who lays the authentication foundation need not be the photographer, nor need the witness know anything of the time, conditions, or mechanisms of the taking of the picture."  32 McCormick on Evid. § 215 (7th ed.).  It is suitable for a witness to identify a photograph by the people or items depicted in it regardless of the witness's knowledge of the particular circumstances under which the photograph was taken.  See, e.g., United States v. Gonzalez, 279 F. App'x 806, 810 (11th Cir. 2008) ("Garcia's lack of knowledge about the photographer and the date of the photograph did not affect its admissibility.").

Here, law enforcement witnesses will authenticate the photographs the government seeks to admit, including, but not limited to, photographs of: (1) narcotics seized from couriers and from attempted mailings that were part of the overt acts of the conspiracy; (2) toy boxes, candles, and packaging that contained the narcotics; (3) luggage and other items that were present during the seizure of the drugs; (4) pictures of the defendants with the seized

drugs; (5) surveillance pictures of couriers; and (6) images from digital devices seized in the investigation.  These photographs are admissible at trial.

### K.    Affirmative Defenses

A defendant must provide written notice of his intent to rely on a defense of entrapment, mental incapacity, alibi, or any other affirmative defense.  See Fed. R. Crim. P. 12.1-12.3; United States v. Vasquez-Landaver, 527 F.3d 798, 802 (9th Cir. 2008).  Defendants have given no such notice.  Should defendants try to rely on such a defense, the government would object and to move to preclude it.

### L.    Reciprocal Discovery

Rule 16 requires a defendant to produce to the government three categories of evidence that he intends to introduce at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosures.  Fed. R. Crim. P. 16(b)(1).  Rule 16 imposes on a defendant a continuing duty to disclose these categories of materials.  Fed. R. Crim. P. 16(c).  Where a party fails to produce discovery as required by Rule 16, the district court may "prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances."  Fed. R. Crim. P. 16(d)(2)(C), (D).

Despite the government's repeated requests, defendants produced no reciprocal discovery.  To the extent that there exists reciprocal discovery to which the government is entitled under Federal Rules of Criminal Procedure 12.1, 12.2, 16(b), or 26.2 that defendants have not produced, the government would seek to have such materials excluded at trial.  See United States v. Young, 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape that

defendant did not produce in pretrial discovery but sought to introduce on cross-examination of government witness, not to impeach, but as substantive "evidence in chief" that someone else committed the crime).

**VI.    CONCLUSION**

The government respectfully reserves the right to supplement or modify this Trial Memorandum as may be appropriate.